IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHAUNA VISSER,<br><br>Plaintiff,<br><br><br><br><br><br>vs.<br><br><br>MILLER DEVELOPMENT COMPANY,<br>INC. & MILLWOOD COMPANIES, L.C.,<br><br>Defendants. | MEMORANDUM DECISION AND<br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT AND<br>DENYING DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT<br><br><br><br><br>Case No. 2:07-CV-319 TS |

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment. For the reasons discussed below, the Court will grant Plaintiff's Motion, but will deny Defendants' Motion.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[1]Fed. R. Civ. P. 56(c).

1

a verdict for the nonmoving party in the face of all the evidence presented.[2]   The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## II. FACTUAL BACKGROUND

Defendants hired Plaintiff on February 7, 2005.  Plaintiff was hired by Nancy Ledford ("Ledford") as a property manager.  During her employment, Plaintiff was supervised by Ledford and Misty Deakin ("Deakin").

On August 23, 2005, a formal evaluation of Plaintiff was performed.  The August 23 evaluation noted that Plaintiff was doing extremely well and was an excellent manager for the property.

Sometime in July 2006, Plaintiff informed Defendants that she was planning to leave Defendants' employ and had found another position.  Defendants' employees Ledford and Deakin, as well as Defendants' CEO, Jay Minnick ("Minnick"), all expressed an interest in keeping Plaintiff as an employee and did not want to let her go.  As a result, Defendants and Plaintiff were able to come to an agreement whereby Plaintiff would work fewer hours and would be given a raise.

Ledford performed a second evaluation on September 1, 2006.  The September 1 evaluation noted some areas which needed improvement.  However, there was nothing in the evaluation to suggest that Plaintiff's job was in jeopardy.  Indeed, Ledford testified that it was a

---

[2]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3]*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);  *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

very positive review.  As part of her evaluation, Plaintiff was given a 7% raise.  During the September 1 evaluation, Plaintiff informed Ledford that she was pregnant.  The September 1 evaluation noted that Plaintiff's personal goal that year was to have a baby.

Also on September 1, 2006, Plaintiff was disciplined for a violation of Defendants' computer use policy.  Again there was no indication that this violation put Plaintiff's job in jeopardy.

On September 22, 2006, Plaintiff's employment was terminated by Ledford.  At the time, Ledford only explained that things were not working out and would not divulge a reason for the termination.  There is conflicting evidence as to who ultimately made the decision to fire Plaintiff and for what reason.

On the same date that she was terminated, Plaintiff was offered a settlement.  As part of that settlement, Plaintiff would be paid $2,500 in exchange for her releasing Defendants from liability.  Plaintiff did not sign the settlement agreement.

Sometime after she was terminated, Ledford contacted Plaintiff and offered her another position within the company.  Plaintiff did not accept that offer.

### III.  DISCUSSION

A.   PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for summary judgment on two of Defendants' Affirmative Defenses: Defendants' Second and Seventh Affirmative Defenses.  Defendants Second Affirmative Defense is that Plaintiff failed to exhaust her administrative remedies.  Defendants now concede that Plaintiff did, in fact, exhaust her administrative remedies.  Therefore, Plaintiff's Motion will be granted on this ground.

Turning to Plaintiff's second argument, Plaintiff seeks summary judgment on Defendants' Seventh Affirmative Defense. Defendants' Seventh Affirmative Defense states: "Defendants have a strict written policy against discrimination, harassment, and hostile work environment. At all times relevant hereto, Defendants required their employees to attend regular training in these areas."[4] Plaintiff interprets this as a defense under the *Faragher*[5]/*Ellerth*[6] doctrine and argues that the doctrine is inapplicable here. Defendants argue that their Seventh Affirmative Defendant not only goes to the *Faragher/Ellerth* doctrine, but that it should remain as a mitigating factor. Plaintiff seeks, at a minimum, a ruling that no *Faragher/Ellerth* defense lies here.

The *Faragher/Ellerth* defense allows an employer to avoid vicarious liability for the actions of its employee supervisor if: "(1) [the employer] 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' *and* (2) 'the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.'"[7] Notably, the *Faragher/Ellerth* defense is available only where the actions of the supervisor have not "'culminate[d] in a tangible employment action' against [the] employee."[8] Here, it is undisputed that a tangible employment action was taken. Thus, this defense is inapplicable.

---

[4] Docket No. 4, at 3.

[5] *Faragher v. City of Boca Raton*, 524 U.S. 129 (1998).

[6] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

[7] *Curran v. AMI Fireplace Co.*, 163 Fed. Appx. 714, 719 (10th Cir. 2006) (quoting *Ellerth*, 524 U.S. at 765) (unpublished decision).

[8] *Id.* (quoting *Burlington*, 524 U.S. at 765).

B.      DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants seek summary judgment on Plaintiff's Title VII claim.  Additionally, Defendants seek judgment on Plaintiff's claim for punitive damages.

1.      TITLE VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to [] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."[9]  Since Plaintiff relies on circumstantial evidence to establish unlawful discrimination, the Court applies the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[10]  Under this framework, Plaintiff must first establish a prima facie case of prohibited employment action.[11]  If the employee makes a prima facie showing, the burden shifts to Defendant to state a legitimate, nondiscriminatory reason for its adverse employment action.[12]  If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.[13]

The Court can assume, for the purposes of this Motion, that Plaintiff has made a prima facie case of prohibited employment action and that Defendants have stated a legitimate,

---

[9]42 U.S.C. § 2000e-2(a)(1).  Title VII makes clear that the term "because of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions."  *Id*. § 2000e(k).

[10]441 U.S. 792, 800–07 (1973).

[11]*Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).

[12]*Id*.

[13]*Id*.

nondiscriminatory reason for their adverse employment action.  The real dispute here is whether Plaintiff has shown that there are genuine issues of material fact as to whether the proffered reasons are pretextual.  For the reasons set out below, the Court finds that Plaintiff has met that burden and that summary judgment is inappropriate.

"A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."[14]   Such a showing may be made by revealing "such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[15]

The Court finds, based on the evidence presented, that Plaintiff has shown there is a genuine issue of material fact as to whether the proffered reasons are pretextual.  A number of factors are relevant to the Court's analysis on this point.  First, there are genuine issues of material fact as to who made the decision to fire Plaintiff and why that decision was made.  In his deposition, Mr. Minnick testified that the decision to fire Plaintiff was made by Ms. Ledford and it was based on the performance review.  Ms. Ledford testified that the decision to terminate Plaintiff's employment was made by Mr. Minnick.  Ledford believed the September 1 evaluation

---

[14]*Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003) (quotation omitted).

[15]*Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1203 (10th Cir. 2006) (internal quotation marks omitted).

was positive.  In their discovery responses, Defendants raised a number of reasons why Plaintiff was terminated.[16]

Second, a reasonable jury could find that Defendants' act of termination was inconsistent with their prior treatment of Plaintiff.[17]  Defendants argue that Plaintiff was terminated because of poor performance.  Plaintiff's supervisor, Ms. Ledford, however, testified that the September 1 evaluation was a positive one.  Additionally, Defendants made efforts to keep Plaintiff employed with them just months earlier, in July 2006, by offering her a more flexible schedule and giving her a raise.  Finally, Plaintiff was given a 7% raise after the September 1 evaluation.  A reasonable jury could infer that Defendants' actions toward Plaintiff prior to her termination were inconsistent with their stated reasons for termination.

Third, a reasonable jury could find that Plaintiff was not fired for performance-based reasons based on Defendants' treatment of Plaintiff after her termination.  In particular, Defendants offered Plaintiff a settlement in exchange for releasing Defendants from potential claims.  In addition, Defendants attempted to hire Plaintiff for a different position after termination.

Finally, a reasonable jury could find pretext as a result of the close temporal proximity between Plaintiff's announcement of her pregnancy and her termination.[18]  Based on the above,

---

[16]*Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005) (stating that pretext may be shown where the employer offers a plethora of reasons and the plaintiff raises substantial doubt about a number of them).

[17]*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999) (stating that evidence of pretext may include prior treatment of plaintiff).

[18]*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1240 (10th Cir. 2004) (observing that "close temporal proximity is a factor in showing pretext, yet is not alone sufficient to defeat summary

the Court finds that Plaintiff has presented sufficient evidence of pretext to survive summary judgment.

2.    PUNITIVE DAMAGES

Defendants further request that they be granted summary judgment on Plaintiff's claims for punitive damages.  The standard for punitive damages under Title VII, limits the recovery of punitive damages to situations where "the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."[19]  "'Malice' or 'reckless indifference' do not require 'a showing of egregious or outrageous' conduct, but instead require proof that the employer acted 'in the face of a perceived risk that its actions [would] violate federal law.'"[20]

In *EEOC v. Heartway Corp.*,[21] the Tenth Circuit held that a punitive damages claim may proceed under *Kolstad* "where (1) there is sufficient evidence for the jury to decide whether an employer intentionally and illegally discriminated on the basis of a disability and (2) there is

_____

judgment").

[19]42 U.S.C. § 1981(a)(b)(1).

[20]*McInnis v. Fairfield Cmtys, Inc.*, 458 F.3d 1129, 1136 (10th Cir. 2006) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535–36 (1999)).

[21]466 F.3d 1156, 1169 (10th Cir. 2006).

evidence that the employer knew the requirements of the ADA."[22]  The Tenth Circuit has applied this reasoning to punitive damages under Title VII.[23]

As discussed, a reasonable jury could find that gender discrimination motivated Defendants' decision to terminate Plaintiff.  Further, there is evidence from which a jury could infer that Defendants knew the requirements of Title VII.  In particular, Defendants' CEO had a masters degree with an emphasis in human resources.  Additionally, there is evidence that Defendants' employees attended training on the issue of discrimination.  Therefore, Plaintiff's punitive damages claim may remain.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 20) is GRANTED.  It is further

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 22) is DENIED.  The hearing set for August 20, 2008 is STRICKEN.

DATED   August 5, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[22]*Id*. at 1169.

[23]*Flitton v. Primary Residential Mortg., Inc.*, 238 Fed. Appx. 410, 419 n.6 (10th Cir. 2007) (unpublished decision).

9